# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TOWNLEY ENGINEERING & MANUFACTURING CO., INC.,**
**Employer Below, Petitioner**

**FILED**
**August 6, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 26-ICA-167**          (JCN: 2024007323)

**RICHARD W. AUSTIN,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Townley Engineering & Manufacturing Co., Inc. ("Townley"), appeals the March 17, 2026, decision of the Workers' Compensation Board of Review ("Board"), which reversed the claim administrator's order denying right acetabular labral tear and a tear of the gluteus medius tendon as compensable conditions of respondent's claim. Additionally, the Board of Review reversed the claim administrator's order denying authorization for physical therapy and injections. Respondent Richard W. Austin ("Mr. Austin") filed a response.[1] Townley did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On October 12, 2022, Mr. Austin signed a WC-1 claim application form stating that he had suffered a lower back injury due to a fall. Prior to the signing of the WC-1 claim application, Mr. Austin had a history of lower back problems, including mild degenerative disc disease at L3-4 with minimal mid levoscoliosis revealed during a February 7, 2019, x-ray of his lumbar spine. Mr. Austin underwent additional x-rays on April 7, 2022, which showed that Mr. Austin had minimal retrolisthesis of L2 on L3 and anterolisthesis of L3 on L4, in addition to the levoscoliotic curvature. Additionally, there was a loss of disc space height at L3-4 and L4-5 and facet arthropathy in the mid and lower lumbar spine. On April 7, 2022, Mr. Austin was seen by Wendy Wilson ("Ms. Wilson"), a nurse practitioner at Surgical Care of Southern West Virginia, where he reported low back pain that was sharp

---

[1] Townley is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Austin is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

at times. Ms. Wilson diagnosed Mr. Austin with low back strain, prescribed medications, and referred Mr. Austin for chiropractic treatment.

On October 24, 2022, at a follow-up appointment with Ms. Wilson, Mr. Austin reported that he had "no problems." Mr. Austin returned to see Ms. Wilson on September 18, 2023. At this follow-up appointment, Mr. Austin reported that he "fell at work in [M]arch or [A]pril" and complained of back and hip pain. Additionally, Mr. Austin stated that he had undergone three weeks of physical therapy, but his lower back pain persisted; he also complained of numbness/tingling, which was worse in the right lower extremity. Moreover, he complained that chiropractic therapy rendered his pain worse. Ms. Wilson noted scoliosis and low back tenderness.

On January 9, 2024, the workers' compensation claim administrator issued an order that held Mr. Austin's claim compensable for low back injury, low back strain, and lumbar radiculopathy, and denied compensability for lumbar intervertebral disc degeneration and arthritis. Mr. Austin did not protest these compensability findings.

Ms. Wilson once again saw Mr. Austin on April 9, 2024. At this visit, Mr. Austin reported he had undergone six weeks of physical therapy, and he requested an MRI. Additionally, Mr. Austin reported that the previous Saturday, he was working with a chainsaw and started experiencing a lot of pain. This caused him to report to "PMC," where he was given a steroid and intravenous Toradol. Mr. Austin also reported that he was discharged from PMC with naproxen, cyclobenzaprine, and methylprednisone prescriptions. Ms. Wilson referred Mr. Austin for an MRI of his lumbar spine and evaluation by a neurosurgeon.

On July 29, 2024, an MRI was performed on Mr. Austin's right hip. This MRI showed an abnormal superior acetabular labrum on the lateral aspect, which was concerning for a labral injury. Moreover, the MRI showed no paralabral cyst or sizable hip joint effusion. Lastly, the physician who interpreted the MRI stated that an MR arthrogram may be beneficial to Mr. Austin.

On July 31, 2024, Robert Crow, Jr., M.D., conducted a neurosurgical evaluation on Mr. Austin. At this appointment, Mr. Austin reported that his symptoms had been present since he fell on his hip/right side while working on October 12, 2022. Dr. Crow reviewed Mr. Austin's April 29, 2024, lumbar MRI. Dr. Crow assessed low back pain, lumbar degenerative disc disease, lumbar spondylosis, and spondylolisthesis of the lumbar region. As Dr. Crow felt that Mr. Austin was describing L5 radiculopathy, Dr. Crow offered a right L5 transforaminal epidural steroid injection, but Mr. Austin rejected it.

On December 12, 2024, Mr. Austin reported to West Virginia Orthopedic Trauma ("WVOT") and was evaluated by Megan Dincher, PA-C. Mr. Austin reported right hip pain, and Ms. Dincher acknowledged a possible tear of Mr. Austin's right acetabular

labrum and suggested an MRA of the right hip to evaluate it. Additionally, Ms. Dincher diagnosed Mr. Austin with trochanteric bursitis of the right hip and performed TABIT injections to treat the trochanteric bursitis.

On January 14, 2025, Mr. Austin underwent a second MRI of his right hip by Philip N. Zambos, M.D. The MRI showed a superior acetabular labral injury, a minimal right hip joint effusion, a small insertional tear at the origin of the right gluteus medius tendon, and a small tear at the myotendinous junction distal to the right gluteus minimus tendon.

On January 21, 2025, Mr. Austin returned to WVOT for a follow-up appointment with Ms. Dincher regarding his right hip pain. Ms. Dincher reported that Mr. Austin recently obtained an MRA and was there to discuss and review the results.[2] Ms. Dincher diagnosed Mr. Austin with arthritis in the right hip and a tear of the right acetabular labrum and recommended a deep right hip injection to treat the arthritis, and physical/occupational therapy to treat the right acetabular labrum tear. On February 25, 2025, Mr. Austin returned to see Ms. Dincher. Ms. Dincher recommended repeated corticosteroid injections, and she discussed alternative treatment modalities regarding Mr. Austin's injuries. Approximately one month later, on March 28, 2025, Ms. Dincher completed a workers' compensation diagnosis update form, and diagnosed Mr. Austin with a right acetabular labrum tear, trochanteric bursitis of the right hip, arthritis of the right hip, and a tear of the right gluteus medius tendon. Ms. Dincher also attached office visit notes and an MRI report to this form.

On May 28, 2025, Mr. Austin reported back to WVOT and was treated by Bradley Stafford, FNP-C ("Mr. Stafford"). Mr. Stafford reported that Mr. Austin's right hip pain had improved significantly after his last steroid injection, and another steroid injection was provided.

On June 7, 2025, Austin Nabet, M.D., performed an independent medical evaluation of Mr. Austin. Dr. Nabet found the following conditions related to Mr. Austin's workers' compensation claim: right hip contusion, low back strain with sciatica, and right hip bursitis. He opined the following conditions were unrelated to Mr. Austin's workers' compensation claim: right hip primary osteoarthritis, right hip labral pathology, gluteus medius and minimus tendinosis. Additionally, Dr. Nabet found that Mr. Austin's lumbar spondylosis was pre-existing and previously active, as documented by his indication of lower back pain and x-rays that were performed immediately following his workplace injury on April 7, 2022. Specifically, regarding a concern for right hip intraarticular pathology, Dr. Nabet stated that, clinically, Mr. Austin had no objective abnormal findings that point to any active intraarticular hip pathology. Dr. Nabet also opined that Mr. Austin's

---

[2] While Ms. Dincher reported that Mr. Austin received an MRA, he seemingly did not receive an MRA between his December 12, 2024, and January 21, 2025, appointments with Ms. Dincher. According to Petitioner's Appendix, Mr. Austin only received an MRI without contrast on January 14, 2025.

complaints of low back pain that radiated down the leg are consistent with sciatica or radicular-type pattern from the low back. Significantly, Dr. Nabet reported that Mr. Austin did not begin complaining of right hip pain, and there was no concern for right hip pain until one to two years after his workplace injury. Lastly, Dr. Nabet reported that labral pathology is common among men of Mr. Austin's age, noting a study that showed that there is a prevalence of asymptomatic labral pathology in 38 to 69% of individuals with asymptomatic hips in the general population. Thus, Dr. Nabet opined that Mr. Austin had reached maximum medical improvement and did not require any further treatment for his compensable injuries.

On August 29, 2025, Mr. Stafford saw Mr. Austin again at WVOT and was administered another corticosteroid injection. On October 6, 2025, Mr. Austin presented to WVOT for an apparent injury to his left knee. According to Mr. Stafford, Mr. Austin reported that he was on his knees at work in August and heard a pop in his knee, followed by a burning, painful sensation.

On October 7, 2025, the claim administrator issued a claim decision, stating that Townley was accepting liability for trochanteric bursitis of the right hip, but denying liability for a right acetabular labrum tear, arthritis of the right hip, and a tear of the right gluteus medius tendon. On March 17, 2026, the Board entered an order affirming in part, and reversing in part the claim administrator's October 7, 2025, order. The Board affirmed the claim administrator's denial of adding right hip arthritis as a compensable diagnosis. However, the Board reversed the claim administrator's order regarding the compensability of the right hip acetabular labrum tear and right gluteus medius tendon tear, finding those conditions compensable. Additionally, the Board reversed the claim administrator's February 26, 2025, order denying authorization for physical therapy and injections. It is from this order that Townley now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;

4

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Townley asserts one assignment of error and argues that the Board committed error by reversing the claim administrator's denial of right acetabular labral tear and a tear of the gluteus medius tendon as compensable injuries in his workers' compensation claim, in addition to authorizing treatment for non-compensable conditions. Specifically, Townley argues that the evidentiary record clearly demonstrates that these conditions developed long after the compensable injury and did not manifest themselves continuously, as required by applicable case law. We disagree.

"In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment [a]nd (3) resulting from that employment." Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Further, "the procedure for adding a diagnosis to a claim is the same as for compensability." *Miller v. Dynamic Energy, Inc.*, No. 21-0206, 2022 WL 4299290, at *4 (W. Va. Sept. 19, 2022) (memorandum decision).

First, Townley asserts that the Board effectively ignored the second prong of the *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), decision. The *Moore* Court held that:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Syl. Pt. 5, *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022). In essence, Townley argues that because Mr. Austin's right hip impairments did not manifest until nearly a year after the compensable injury, the Board committed reversible error by finding the right hip injury to be a compensable condition. We disagree. The *Moore* Court did not apply a time limitation on when symptoms from an injury must manifest in order to be found compensable. Moreover, the Board noted that Mr. Austin complained of right

5

hip symptoms since he was injured as evidenced by Dr. Crow's treatment note and Ms. Dincher's progress reports. We also emphasize that on October 7, 2025, Townley accepted right hip bursitis as compensable, which is an acknowledgement that Mr. Austin had right hip complaints soon after the compensable injury.

Second, Townley argues that the Board's decision was based upon unsupported speculation. Specifically, Townley argues that there is no competent medical evidence showing that Mr. Austin injured his right hip when he fell at work. We disagree. Clearly the claim administrator, in holding the trochanteric bursitis of the right hip as a compensable condition, acknowledged a hip injury on October 7, 2025. It appears this diagnosis has been further refined, through imaging, to be various tears. Thus, Townley's second argument fails.

Third, Townley argues that new hip and gluteus tears found on Mr. Austin's MRI twenty-seven months after his compensable injury cannot be related to that injury when there was an intervening injury in March or April of 2023. In support of this argument, Townley cites syllabus point 4 from *Wilson v. Workers' Compensation Commissioner*, which states,

> If a worker's compensation claimant shows that he received an initial injury which arose out of and in the course of his employment, then every normal consequence that flows from the injury likewise arises out of the employment. If, however, a subsequent aggravation of the initial injury arises from an independent intervening cause not attributable to the claimant's customary activity in light of his condition, then such aggravation is not compensable.

Syl. Pt. 4, *Wilson v. Workers' Comp. Comm'r*, 174 W. Va. 611, 328 S.E.2d 485 (1984). We disagree. A mere mention in a report with nebulous dates like "March or April" is not enough to show that the Board was clearly wrong in its decision. Townley points to no credible evidence demonstrating that Mr. Austin sustained an intervening injury to his right hip or lower extremity which could have caused the pathology shown in Mr. Austin's MRIs.

Fourth, Townley argues that the Board erred when it found Dr. Nabet's opinion, that Mr. Austin's hip condition results from preexisting pathology, to be unreliable. Townley points out that the Board affirmed the denial of right hip arthritis. Essentially, Townley argues that the Board relied on the opinion of Ms. Dincher, a physician's assistant, over that of Dr. Nabet, a neurosurgeon. We disagree.

Contrary to Townley's assertions, the Board found that Dr. Nabet's opinion could not be reconciled with certain undisputed facts, including that Mr. Austin's hip was completely asymptomatic prior to the compensable injury; that he developed persistent and

6

continuing symptoms in his hip after the injury; and imaging following the injury showed the hip and gluteus tears. Finally, the Board noted that no medical evidence showed that the tears preexisted the compensable injury. Here, the Board weighed the evidence and found Dr. Nabet's opinion was not credible or reliable in the context of the issue presented. Thus, we do not find error in the Board's determination that Dr. Nabet's opinion is irreconcilable with the undisputed facts of the claim.

We conclude that the Board was not clearly wrong in affirming in part, and reversing in part the claim administrator's October 7, 2025, order, and reversing the claim administrator's February 26, 2025, order. When reviewing the Board's decisions, the SCAWV has said that "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are *deferential* ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996) (emphasis added). In light of this deferential standard of review, we cannot conclude that the Board was clearly wrong in affirming, in part, and reversing, in part, the claim administrator's October 7, 2025, order, and reversing the claim administrator's February 26, 2025, order.

Accordingly, we affirm the Board's March 17, 2026, order.

Affirmed.

**ISSUED:** August 6, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

7